**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DANIEL HUMAN, *individually and on* *behalf of similarly situated persons,*<br><br>    Plaintiff,<br><br>    v.<br><br>FRUBBEL, LLC, *d/b/a* *Valu-Pass*, et al.,<br><br>    Defendants. | No. 4:24-CV-50 RLW |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Frubbel, LLC's Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. (ECF No. 6).  The motion is fully briefed and ripe for review.  For the reasons that follow, the Court denies Defendant Frubbel, LLC's Motion to Dismiss for lack of personal jurisdiction.

### *I.  Background*

On December 5, 2023, Plaintiff Daniel Human filed suit against Defendant Frubbel, LLC, d/b/a Valu-Pass, ("Frubbel") and nine John and Jane Doe defendants ("the Doe Defendants") in the Circuit Court of St. Louis County, Missouri.  Plaintiff alleges that the defendants called his cellular telephone number on several occasions, despite the fact that his number was included on the federal and Missouri No Call registries.  In his state court Petition (hereinafter "Complaint"), Plaintiff asserts Frubbel and the Doe Defendants violated provisions of the Missouri Merchandising Practices Act related to telemarketing, Mo. Rev. Stat. §§ 407.1076 and 407.1098, (Count I), and the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, et seq., (Count

II).  Plaintiff brings claims on his own behalf and seeks to represent individuals who are similarly situated in a class action.

On January 9,  2024, Frubbel removed the  action to this Court on the basis of federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446.  (ECF No. 1).  Frubbel responded to the Complaint by filing a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the motion presently before the Court.

## II.  Allegations in Complaint

Plaintiff's Complaint contains the following factual allegations:

Plaintiff registered his residential cellular telephone number on the Missouri and National Do Not Call registries to end all telemarketing calls to his phone. Despite this fact, Frubbel and the Doe Defendants placed nine telemarketing calls to Plaintiff's phone beginning in February 2023.[1]  During the calls, the Doe Defendants stated that they were agents for Valu-Pass and provided the company's address, which is the same as Frubbel's. The telemarketers solicited Plaintiff to purchase a "product discount package" from Frubbel. (ECF No. 4 at 8).  Plaintiff informed the telemarketers that he was busy, and they were interrupting his family time.  He also informed the telemarketers that he was on the Missouri and National Do Not Call registries. However, the Doe Defendants continued to make a series of telemarketing calls to Plaintiff's number, each of which "were condoned, encouraged, enticed, and ratified" by Frubbel.  (Id. at 7). Plaintiff neither provided his prior written consent nor requested these calls.

The Complaint alleges Frubbel is a Florida-based "product discount company that solicits customers all over the country to purchase their discount products."  (Id. at 3).  Plaintiff alleges

---

[1]The Doe Defendants are defined as "unknown telemarketers, employees, agents, or vendors of Frubbel[.]" (ECF No. 4 at 3).

Frubbel, the Doe Defendants, and "their agents, employee and/or vendors" advertise and sell discounted products targeted at senior citizens, including those in Missouri.  (Id.)  According to the Complaint, Frubbel makes telemarketing calls or employs its agents to make telemarketing calls within and into this District.  Plaintiff asserts that Frubbel and the Doe Defendants "have sufficient minimum contacts with the State of Missouri and this District in that they transact business in Missouri, profit personally from Defendant Frubbel and Valu-Pass sales made in Missouri, they send their products to Missouri and advertise in Missouri[.]" (Id.) Therefore, according to Plaintiff, they are subject Missouri's long-arm statute and personal jurisdiction in the State of Missouri.  (Id. at 4).

### III.  Legal Standard

When personal jurisdiction is challenged, the party seeking to invoke the jurisdiction of a federal court bears the burden to establish that jurisdiction exists.  Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted).  To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "a plaintiff must make a prima facie showing of personal jurisdiction by pleading facts sufficient to support 'a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'"  Valez v. Portfolio Recovery Assocs., 881 F. Supp. 3d 1075, 1080 (E.D. Mo. 2012) (quoting K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotations and citations omitted)).  A defendant can make a factual challenge to personal jurisdiction, but "[t]he allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  Cantrell v. Extradition Corp. of Am., 789 F. Supp. 306, 308–09 (W.D. Mo. 1992); see also Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1076 (8th Cir. 2004). If the parties present conflicting affidavits, the Court "must view the evidence in the light most favorable to the plaintiff

and resolve all factual conflicts in [his] favor in deciding whether the plaintiff made the requisite showing." Digi-Tel Holdings, Inc. v. Proteq Telecoms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996) (citing  K-V Pharmaceutical Co., 648 F.3d at 591–92). "The evidentiary showing required at the prima facie stage is minimal." Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010) (quotation omitted). "[J]urisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing."  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

## IV.  Discussion

Personal jurisdiction generally takes two forms: "'[G]eneral' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 582 U.S. 255, 262 (2017) ("Bristol-Myers") (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011)).[2] The Court will address each in turn.

### A.      General Jurisdiction

Under the theory of general jurisdiction, also known as all-purpose jurisdiction, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." Dever, 380 F.3d at 1073 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)).  However, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler AG v.

---

[2]Recently, the U.S. Supreme Court recognized an often-forgotten third method of obtaining personal jurisdiction over an out-of-state defendant.  The Court held that state statutes requiring out-of-state corporations to consent to personal jurisdiction in the state as condition of registering to do business in a state do not violate the Due Process Clause. Mallory v. Norfolk S. Ry. Co., 600 U.S. 122 (2023). Neither side asserts Frubbel is subject to such a statute in Missouri.

Bauman, 571 U.S. 117, 137 (2014).  For a corporation, the inquiry is whether the forum is one in which the corporation "is fairly regarded as at home,"  which is the place of incorporation and principal place of business. Id. (internal quotation and citation omitted). For a limited liability company, the Court may consider the state of formation, principal place of business, and place of citizenship of its members in determining whether the company is subject to general personal jurisdiction in the forum.  Id.  See also Carney v. Guerbet, LLC, No. 4:18-CV-1494 CAS, 2018 WL 6524003, at *3 (E.D. Mo. Dec. 12, 2018). A business entity that simply operates or does business in many places cannot be deemed at home in all those places for purposes of general jurisdiction. Daimler, 571 U.S.  at 139, n.20.

Based on the allegation in the Complaint and evidence in the record, the Court finds Frubbel is a Florida limited liability company with its principal place of business in Florida. Frubbel submitted evidence showing that Frubbel's sole member is Rezervco Holdings, Inc., a Florida corporation with its principal place of business in Florida.  There are no allegations or evidence in the record that would permit the Court to find Frubbel is subject to general jurisdiction in Missouri.  Id. at 137. Finding there is no general jurisdiction over Frubbel in Missouri, the Court now turns to whether there is specific jurisdiction over this non-resident defendant.

### B.    Specific Jurisdiction

Specific jurisdiction requires the suit to arise out of or relate to the defendant's contacts with the forum state.  Bristol-Myers Squibb Co., 582 U.S. at 262 (citing Daimler AG, 571 U.S. at 127).  This suit was removed to this Court based on the TCPA, which is silent as to service of process.  Therefore, the existence of personal jurisdiction over a non-resident defendant depends on the long-arm statute of the forum state and the federal Due Process Clause. Bros. & Sisters in

Christ, LLC v. Zazzle, Inc., 42 F.4th 948, 951 (8th Cir. 2022); Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004).

Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business or commit a tort within the state, as to any cause of action arising from the commission of such acts. Mo. Rev. Stat. § 506.500.1. "A person or firm transacts business by visiting Missouri or sending its product or advertising here." Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc., 702 F.3d 472, 476 (8th Cir. 2012). Missouri courts have interpreted the "tortious act" prong to include "[e]xtraterritorial acts that produce consequences in the state." Bryant v. Smith Interior Design Grp., Inc., 310 S.W.3d 227, 232 (Mo. 2010). These categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted "to provide for jurisdiction ... to the full extent permitted by the [D]ue [P]rocess [C]lause." Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir. 2011) (quotations omitted).

"Due process requires that there be minimum contacts between the nonresident defendant and the forum state such that the assertion of personal jurisdiction is consistent with traditional notions of fair play and substantial justice." Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980); Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "'Sufficient contacts exist when the defendant's conduct and connection with the  forum state are such that [it] should reasonably anticipate being haled into court there.'" Id. (quoting Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994)).  To support a finding of reasonable anticipation, "there must be some act by which the defendant purposefully avails itself of the privilege of conducting

6

activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" Id. (quoting Bell Paper Box, Inc., 22 F.3d at 818–19).

Courts apply a five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state. Dever, 380 F.3d at 1073. The five factors are: "1) the nature and quality of [the defendant's] contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) [the] convenience of the parties." Id. at 1073–74 (quoting Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)). The Court is to give significant weight to the first three factors. Id. at 1074; Fastpath, Inc., 760 F.3d at 821.

Here, Frubbel does not argue that the conduct alleged in the Complaint falls outside of the scope of Missouri's long-arm statute or fails to meet the minimum contacts requirements of due process, but rather it denies that it committed or was responsible for the alleged misconduct in the Complaint. More specifically, Frubbel asserts that it "does not engage in any outbound telemarketing, does not employ any outbound telemarketing vendors, and has not otherwise authorized or have knowledge of any person or entity placing outbound telephone calls on its behalf." (ECF No. 6 at 2). Therefore, according to Frubbel, because it did not make or was not responsible for the calls to Plaintiff's phone, it has not availed itself of the jurisdiction of the courts of Missouri, and this Court lacks personal jurisdiction over it.

In support of its motion and to contest the factual allegations in the Complaint, Frubbel submitted the declaration of Randall Warren, Managing Member for Frubbel, LLC d/b/a Valu-Pass.  Mr. Warren states in his declaration that since 2021, Frubbel has not "engaged in any outbound telephone calls or text messages to market Frubbel's products, or otherwise engaged in outbound telemarketing or prospective customers." (ECF No. 6, Ex. 1 at 1).  He further states that

7

since 2021, Frubbel has not engaged or authorized any person or entity to place any outbound calls on its behalf or in an effort to sell Frubbel's products." (Id.)  He states, "Frubbel did not initiate any phone calls to Plaintiff's phone number or authorize any party to place outbound calls on its behalf, including the nine calls alleged in the Complaint." (Id. at 2).

Plaintiff responded by filing a declaration he executed.  Plaintiff states in his declaration that he received nine phone calls from telemarketers who identified Valu-Pass as the company they were calling on behalf.  Plaintiff further states that when asked, telemarketers identified Valu-Pass's address, 1060 Maitland Center Commons Blvd, Suite 340, Maitland, Florida 32751, which is also Frubbel's address. Plaintiff further states that during conversations with the telemarketers, he was informed that he could sign-up, enter his credit card information, and make purchases through the Valu-Pass's website, valu-pass.com.  Plaintiff visited valu-pass.com and attached screenshots of the website, which is powered by Frubbel.  (ECF No. 11, Exs. 3-4).

In response to Plaintiff's declaration, Mr. Warren executed a supplemental declaration in which he admits that Frubbel owns and operates the website valu-pass.com but contends that Frubbel has not utilized contact information of any individual that submitted information on the valu-pass.com landing webpage since 2021.

Frubbel argues that the evidence before the Court demonstrates that it neither made nor authorized the calls to Plaintiff's phone. Frubbel further argues that in addition to Mr. Warren's declarations, which establish Frubbel was not responsible for the calls, it defies logic that Frubbel or its agents would call Plaintiff and direct him to a website that "has not functioned in years." (ECF No. 12 at 1).  Frubbel asserts that it is not uncommon for "unscrupulous fraudsters" to conceal their identify by identifying as a legitimate business. (Id. at 2). Frubbel does not explain why unscrupulous fraudsters would direct victims to another entity's website.

The Court has carefully reviewed Plaintiff's allegations, Mr. Warren's declarations, Plaintiff's declaration, and the exhibits and does not agree with Frubbel that there is only one conclusion one can draw from the evidence in the record.  In moving for dismissal, Frubbel is asking the Court to credit Mr. Warren's declarations over Plaintiff's declaration.  But at this early stage in the proceeding, the evidence, which is conflicting, has yet to be tested by the litigation process.  Frubbel is also asking that the Court speculate in order fill in unanswered questions, such as who could have made the calls if not Frubbel or its agents.  In the Court's view, depending on the weight one assigns the declarations, there are a number of conclusions one could draw from the limited evidence before the Court, one being that Frubbel or its agents made the calls to Plaintiff's phone.  The Court finds Frubbel's argument is unpersuasive.

Frubbel also points to three district court cases from outside the Eighth Circuit in support of its argument that Plaintiff's allegations and declaration are inadequate to establish personal jurisdiction over Frubbel in Missouri.  The district court cases Frubbel cites, however, are not controlling authority and are distinguishable on the facts.

In Nelums v. Mandu Wellness, LLC, the plaintiff received text messages that never identified the sender or seller.  No. CV 2:22-828 KRS/GBW, 2023 WL 5607594, at *3 (D.N.M. Aug. 30, 2023).  Id.  Here, there is evidence that Plaintiff received telephone calls and spoke with telemarketers, who not only identified themselves as being agents of Valu-Pass, but directed Plaintiff to valu-pass.com, a website Frubbel admits it owns and operates.

In Cunningham v. Local Lighthouse Corporation, the district court held that the plaintiff failed to establish there was personal jurisdiction over two corporate officers based on telemarketing calls and the plaintiff's general allegations that the individual defendants authorized the calls and failed to take appropriate measures to comply with the TCPA.  No. 3:16-

CV-02284, 2017 WL 4053759, at *2 (M.D. Tenn. Aug. 7, 2017), report and recommendation adopted, No. 3:16-CV-02284, 2017 WL 4022996 (M.D. Tenn. Sept. 13, 2017).  But notably, the corporation did not contest personal jurisdiction.  Id.  Here, Plaintiff is seeking to hold a limited liability company liable, not its members or officers.

Finally, in Baccari v. Carguard Administration, Inc., the defendants moved to dismiss the complaint for lack of subject matter jurisdictions on standing grounds, not for lack of personal jurisdiction.  No. 22-CV-1952, 2022 WL 3213839, at *3 (E.D. Pa. Aug. 8, 2022).  The defendant made a factual challenge to subject matter jurisdiction, and the plaintiff failed to respond with evidence.  Id.  Here, Frubbel is challenging personal jurisdiction, not subject matter jurisdiction, and Plaintiff has come forward with evidence.

### V. Conclusion

Frubbel contests that it made or authorized the telemarketing calls to Plaintiff's phone – an issue that is central to Plaintiff's suit and amounts to a factual dispute on the merits of his claims. In support of its contention, Frubbel submitted two declarations from one of its members. Plaintiff countered Frubbel's evidence with his own declaration.   When, as here, the parties present conflicting declarations on a motion to dismiss for lack of personal jurisdiction, the Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in [his] favor …." Digi-Tel Holdings, Inc., 89 F.3d at 522.   Viewing the evidence in a light most favorable to Plaintiff, the Court finds Plaintiff has made the required, minimal evidentiary showing for the Court to find it has specific personal jurisdiction over Frubbel.  Johnson, 614 F.3d at 794.  Plaintiff presented sufficient evidence to show that Frubbel or its authorized agents purposely directed phone telemarketing calls to Plaintiff in Missouri knowing his phone number was registered on the National and Missouri Do Not Call registries.  Consequently, the Court

finds Plaintiff has met his burden at this stage in the proceedings such that Frubbel is subject to personal jurisdiction in this Court.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Frubbel, LLC's Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is **DENIED.**  [ECF No. 6]


_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  8th   day of May, 2024.

11